𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

ELLIOTT V. BIRRELL.

March 30, 1920.

1. LANDLORD AND TENANT—*Estate from Year to Year—Estate from Month to Month.*—An estate from year to year is an estate for years; so is an estate from month to month.

2. LANDLORD AND TENANT—*Estate from Year to Year—Estates at Will—Estates by Sufferance.*—Tenancies from year to year arise either by express agreement or implication, and by judicial construction they have replaced estates at will and by sufferance, on account of the uncertainties and injustices of the latter. From the circumstance that leases and rent are generally measured by yearly periods, these periodic estates are usually known as estates from year to year, but in many cases the period may be from month to month, week to week, .etc.

3. LANDLORD AND TENANT—*Indefinite Term—Periodic Tenancy.*—When a tenant is in possession under a lease for an indefinite term, or under a general permission to occupy and pay a periodical rent, a periodical tenancy is thereby created, the length of the recurring periods of which is determined by the character of the payments.

4. LANDLORD AND TENANT—*Periodic Tenancies.*—The typical periodic tenancy is one from year to year, but the essential qualities of a tenancy from month to month are the same. Indeed, this and the other classes of periodic tenancies are merely a development from the tenancy from year to year.

5. LANDLORD AND TENANT—*Tenancy from Year to Year—Holding Over.*—Where a landlord allows a tenant for a term of years to hold over after the expiration of his term, the one paying and the other receiving the rent formerly paid, without any new agreement, the tenant becomes a tenant from year to year. But this does not mean that every lessee holding over is entitled to hold for another year. The preceding estate may have been one of years, but for a less period than a year. This fact may determine the extent of the ensuing periodic estate.

6. LANDLORD AND TENANT—*Difference Between Estates from Year*

*to Year and Estates from Month to Month.*—The difference between the estate from year to year, and the lesser periodic estates, is chiefly with respect to the notice to be given for termination.

7. LANDLORD AND TENANT—*Occupation Prima Facie Tenancy from Year to Year.*—As a general proposition, every occupation of land is *prima facie* a tenancy from year to year, yet it may be shown to be any other tenancy. If the reservation as to the rent, or other circumstances proper to be considered, indicate an agreement for an annual holding, then the tenancy is from year to year, but not so if the reservation of rent and other circumstances indicate that a tenancy for a lesser period is intended.

8. LANDLORD AND TENANT—*Tenancy from Year to Year—Urban and Rural Property.*—A demise of farming lands, where no limit of time is fixed, and the rent is measured by any aliquot part of a year, is *prima facie* from year to year, whether the payment of rent is to be made yearly, half-yearly, or by the month. But when the demise for an uncertain period is of urban property, the conclusion that the periodic estate is intended to be from year to year is not so readily drawn, particularly when the agreement provides that the rent is to be paid by the month. It is proper to look to the purpose for which a lease of indefinite duration is made to determine the character of the tenancy created.

9. LANDLORD AND TENANT—*Estate at Will—Implied Tenancy from Year to Year.*—In case of an estate at will, where there is an entry and payment of rent, the estate is converted into an implied tenancy from year to year, or for some time, as may be indicated by the payment of rent.

10. LANDLORD AND TENANT—*Periodic Tenancy—Estate from Year to Year—Estate from Month to Month.*—Upon comparison and consideration of the authorities, the Supreme Court of Appeals is of opinion, with relation to the creation of periodic estates by a general letting, that an estate from year to year is not inexorably established upon such a letting by the bare fact that the rent is accepted, or measured by an aliquot part of a year, but that the length of the recurring periods of the estate so established should be derived from the character of the letting, the payment of the rent, and the attendant facts proper to be considered in seeking the intention of the parties.

11. LANDLORD AND TENANT—*Estate from Year to Year—Estate from Month ot Month—Case at Bar.*—In the instant case there was no agreement between the parties as to the length of the term; the lands which were the subject of the lease are urban

property, and these lands were demised to the defendant to be used by him as his dwelling, at a monthly rental of $25.

*Held:* That the periodic estate established by the contract of the parties in the instant case was a tenancy from month to month, and not from year to year.

Error to a judgment of the Circuit Court of Alexandria County, in an action of unlawful detainer. Judgment for defendant. Plaintiff assigns error.

*Reversed.*

The opinion states the case.

*Charles T. Jesse,* for the plaintiff in error.

*Robinson Moncure,* for the defendant in error.

SAUNDERS, J., delivered the opinion of the court.

Julian N. Major was the owner of two lots in Cottage Park, Alexandria county, Virginia. On April 16, 1916, he leased these lots to Edwin M. Birrell, to be used as his dwelling, at an agreed monthly rental of $25.00 per month, nothing being said as to the length of the term. Subsequently, Major sold the property to one Katie Elliott, who thereafter regularly collected the monthly rent from the lessee.

Desiring to secure possession of her property, the plaintiff instituted an action of unlawful detainer before a justice of the peace of Alexandria county, giving the lessee a month's notice. The justice of the peace trying the warrant gave a judgment in favor of the plaintiff. From this judgment the defendant, Birrell, took an appeal to the Circuit Court of Alexandria county. The case, by agreement, was submitted as to all matters of law and fact to the said court for determination. Thereafter, on May 8, 1919, the court, being of opinion that the plaintiff was not entitled

to recover possession of the premises upon one month's notice, entered an order to that effect, giving judgment with costs in favor of the defendant. To this judgment a writ of error was allowed and supersedeas awarded by one of the judges of this court.

The following stipulation of facts upon which the case was heard is a part of the record:

"On the 15th day of April, 1916, one Julian N. Major, who was then the owner of the property involved in this proceeding, to-wit, lots numbered 11 and 12 in Block 6, of the sub-division of Cottage Park, Jefferson magisterial district, Alexandria county, Virginia, leased the same to the defendant, Edwin M. Birrell, to be used by him as his dwelling, at a monthly rental of $25.00 per month, nothing being said or agreed as to the length of the term, the defendant simply agreeing to take the property and pay $25.00 per month. Subsequently the plaintiff, Katie Elliott, purchased said property and is now the owner thereof, and has since her purchase and up to the time of giving the notice hereinafter mentioned, received said monthly rent from the defendant.

"One month's proper and legal notice was given to the defendant by the plaintiff to quit and deliver up the premises, and upon the refusal of the defendant to do so, and after the expiration of the said month, plaintiff had a warrant of unlawful detainer issued against defendant for said premises, after affidavit duly made as required by the statute.

"The justice of the peace who tried said warrant gave judgment for the plaintiff, from which judgment the defendant appealed to the circuit court of Alexandria county."

The sole question presented for determination is whether the agreement of the parties created a tenancy from year to year or from month to month.

[1-3] An estate from year to year is an estate for years;

22

so is an estate from month to month. Words & Phrases, Vol. 8, 6908. See also Minor on Real Property, Vol. 1, sec. 390; 2 Min. Inst., p. 201. Tenancies from year to year arise either by express agreement or implication, and by judicial construction they have replaced estates at will and by sufferance, on account of the uncertainties and injustices of the latter. From the circumstance that leases and rent are generally measured by yearly periods, these periodic estates are usually known as estates from year to year, but in many cases the period may be from month to month, week to week, etc. Minor on Real Prop., Vol. 1, sec. 390; Blackstone, Vol. 2, p. 147, and note; Tiffany, Landlord & Tenant, p. 121. When a tenant is in possession under a lease for an indefinite term, or under a general permission to occupy and pay a periodical rent, a periodical tenancy is thereby created, the length of the recurring periods of which is determined by the character of the payments. 18 Am. & Eng. Ency. L., p. 193.

A tenancy analogous to that from year to year and differing therefrom merely in the length of the recurring periods with reference to which it is measured, may be created expressly, or as a result of conditions similar to those giving rise to tenancy from year to year. That is, a tenancy from month to month, from week to week, indeed from any period to like period, is created by the reservation or payment of rent, with reference to such period, when no period for the duration of the tenancy is named. Tiffany, Landlord & Tenant, p. 133.

[4] The typical periodic tenancy is one from year to year, but the essential qualities of a tenancy from month to month are the same. Indeed, this and the other classes of periodic tenancies are merely a development from the tenancy from year to year. Tiffany, p. 121.

[5, 6] Where a landlord allows a tenant for a term of years to hold over after the expiration of his term, the one

paying and the other receiving the rent formerly paid without any new agreement, the tenant becomes a tenant from year to year. *Pierce* v. *Grice*, 92 Va. 767, 24 S. E. 392, and cases cited. But this does not mean that every lessee holding over is entitled to hold for another year. The preceding estate may have been one of years, but for a less period than a year. This fact may determine the extent of the ensuing periodic estate.

"If a landlord elect to treat one holding over as a tenant, he thereby affirms the form of tenancy under which the tenant previously held. If that was a tenancy by the month, it will presumptively so continue. The implied renewal of a lease assumes a continuation of its characteristic features." *Hollis* v. *Burns*, 100 Pa. 209, 45 Am. Rep. 379.

In *Branton* v. *O'Briant*, 93 N. C. 99, this instruction was approved: "If the plaintiff rented a house at five dollars a month and held over for several months, paying the same rent without a new agreement, she would be a tenant from month to month."

With respect to periodic estates arising by holding over, and the payment and receipt of rent, it will be noted that the agreement of the parties as to the character of the periodic estate is implied from and determined by the characteristics, including the payment of rent, of the estate which precedes it. Where the periodic estate is established by a general letting, the agreement as to payment of rent becomes of prime importance in determining the character of the periodic estate, whether it is to be held an estate from year to year, or for a lesser period. The difference between the estate from year to year, and the lesser periodic estates, is chiefly with respect to the notice to be given for termination.

The chief difficulty in determining whether a tenancy for an indefinite time—that is, a general tenancy (*Bright*

v. *McOuat,* 40 Ind. 521)—is a tenancy from year to year, or for a lesser period, arises in the main from the inconclusiveness and indefiniteness of the terms of agreement.

In Minor's Real Property, cited *supra,* sec. 390, and 2 Minor's Institutes, p. 200, it is stated that "every general letting, if the lessor accepts yearly rent, or rent measured by any aliquot part of a year, if not expressed to be an estate at will, is an estate from year to year." If this statement is of universal and inflexible application, then every letting for an indefinite time, whether the rent is to be paid yearly, half-yearly, every three months, or each month, will be a tenancy from year to year, without regard to the character of the property leased, whether urban or agricultural, or to other pregnant circumstances.

The statement in Graves' Real Property, sec. 67, is that if "under agreement for a lease, the tenant enters and pays an annual rent, or rent with reference to a year, he becomes a tenant from year to year." The propriety of the conclusion, that a tenant for an indefinite time who agrees to pay a yearly, or half-yearly rent, becomes a tenant from year to year, is admitted. The agreement with respect to the payment of the rent yearly, or half-yearly, in the absence of other and more controlling circumstances, justifies the conclusion that the parties are contracting for a yearly period. But is this conclusion so apparent when the agreement for the rent contemplates a monthly payment? A month is an aliquot part of a year, but it is also a definite period of time with respect to which contracts are made. An agreement that the rent contracted for shall be paid by the month, if not controlled by other features of the case, is consistent with the conclusion that the parties have in mind a tenancy by the month. This distinction is evidently in the mind of the following writer: "Where the letting is by the month indefinitely, and not as for an aliquot part of a year, the tenancy is from quarter to quarter, month to month, etc." Taylor, Landlord & Tenant, sec. 57.

[7, 8]   In each given case, the contract between the parties, construed in the light of all the facts must determine the tenancy, and fix the respective rights of the lessor and lessee.

As a general proposition, "every occupation of land is *prima facie* a tenancy from year to year, yet it may be shown to be any other tenancy." *Humphries* v. *Humphries,* 25 N. C. 363.

A large proportion of the English decisions under the general head of periodic tenancies, relate to farming lands. A demise of such lands, when no limit of time was fixed, and the rent was measured by any aliquot part of a year, would be interpreted with reference to the subject matter. There is a certain succession of operations contemplated in the ordinary use of farming lands—planting, cultivation and harvesting—requiring in the main the period of a year. Hence, the natural conclusion that the parties contracting for the lease of such lands for an indefinite period, intended the periodic estate to be from year to year, whether the payment of rent was to be made yearly, half-yearly, or by the month. But when the demise for an uncertain period is of urban property, the conclusion that the periodic estate is intended to be from year to year is not so readily drawn, particularly when the agreement provides that the rent is to be paid by the month. That it is proper to look to the purpose for which a lease of indefinite duration is made, to determine the character of the tenancy created, is established by the case of *Patton* v. *Axley,* 50 N. C. 440. In that case a demise for an indefinite period, rent to be paid at the end of each quarter, was held to create a tenancy from year to year. The court stated that this conclusion was arrived at partly from a consideration of the purpose for which the lease was made, and partly from the fact that the rent reserved was payable quarterly.

In most of the decided cases the facts very clearly indicate that a tenancy from year to year was intended. The intention to establish a tenancy of this character is frequently derived from the fact that the demise in terms provides for a *yearly* rent. The further fact that the rent is to be paid *half-yearly, or quarterly,* is in aid of this conclusion that a tenancy from year to year was contemplated.

Lord Mansfield states the rule as to implied lettings from year to year as follows: "A general letting at a yearly rent, though payable half-yearly, or quarterly, and though nothing is said about the duration of the term, is an implied letting from year to year." *Richardson* v. *Langridge,* 4 Taunton, 130.

See also Tiffany, p. 125: "Tenancy from year to year may be created by express language, or by a letting with no limitation as to the duration of the tenancy, followed by the acceptance and payment of a yearly rent."

"The payment of a rent in order to give rise to an intention to create a tenancy from year to year, must be with reference to a yearly holding, by which is meant that it is paid as rent for a year, or as a part of rent computed by the year." *Idem,* p. 126.

To the same effect is the following citation from Taylor on Landlord & Tenant, sec. 55: "Since the time of the year books, the courts have treated a general occupation by permission, no time being fixed for its continuance, as a tenancy from year to year, whenever the reservation of rent, or other circumstances, indicated an agreement for an annual holding." This we regard as a very accurate statement of the rule of interpretation proper to be applied to these indefinite lettings. If the reservation as to the rent, or other circumstances proper to be considered, indicate an agreement for an annual holding, then the tenancy is from year to year, but not so if the reservation of rent and other circumstances indicate that a tenancy for a

lesser period is intended. For instance, in the same authority, section 57, it is stated that "where the letting is by the month indefinitely, and not as for an aliquot part of a year, the tenancy is from quarter to quarter, month to month, etc."

"The theory of the creation of a periodic tenancy by the payment and receipt of rent is that it shows an intention to create such a tenancy. But it is evidence merely of intention. The question is one for the jury." Tiffany, pp. 126-7.

[9] To make the tenancy one from year to year, the payment of rent must mean a payment with reference to a yearly holding. *Johnson* v. *Albertson,* 51 Minn. 336, 53 N. W. 642. In case of an estate at will, where there is an entry and payment of rent, the estate is converted into an implied tenancy from year to year, or for some other time, as may be indicated by the payment of rent. *Hoover, Rhodes & Co.* v. *Pacific Oil Co.,* 41 Mo. App. 323, and cases cited.

The rule as to the creation of tenancies from year to year is rather broadly stated in 2 Minor's Institutes and Minor on Real Property, cited *supra.* Apparently these citations justify the conclusion that every general letting, if the lessor accepts rent, or rent measured by *any* aliquot part of a year, is an estate from year to year. In many cases this is doubtless the proper conclusion to be derived, but there are many general lettings with an agreement for, or an acceptance of, rent measured by an aliquot portion of a year, which are not tenancies from year to year. It is of course proper to look to the terms of the letting, and the agreement for, or acceptance of, rent but there are other determining factors, such as the character of the property leased or the annual value of the land in contrast with the rent paid, which are likewise proper to be considered in reaching a conclusion as to the extent of the periodic estate created. The presence of these features,

or other attendant features, may fully justify the finding that a general letting with an agreement for the payment of rent by the month, admittedly an aliquot part of a year, created a tenancy from month to month.

"Evidence of a gross disparity between the rent actually paid, and the annual value of the property has been regarded as sufficient to rebut the presumption of a tenancy from year to year." Tiffany, p. 127. 18 Am. & Eng. Ency. L., p. 193.

There is much authority for the specific proposition that a lease for no definite period, with a provision for the payment of rent by the month, creates a tenancy from month to month and not one from year to year.

"A tenancy from month to month is created *prima facie* by the reservation, or the payment of rent, with reference to such a period when no period for the duration of the tenancy is named. The view of many jurisdictions is that a letting at a monthly rent, for no definite period, *prima facie* creates a tenancy from month to month." Tiffany, pp. 133, 134, and cases cited.

"To constitute a tenancy by the month, either a special agreement to that effect is necessary, or the tenancy must be implied from the manner in which the rent is paid, for where it is paid by the week, month, quarter, or year, a weekly, monthly quarterly, or yearly hiring is presumed, according to the circumstances. Where it appears an annual rent is reserved, and the payment is to be made by the month, quarter, or week, then it is a yearly letting without regard to the periods of payment." *Douglas* v. *Seiferd*, 18 Misc. Rep. 188, 41 N. Y. Supp. 289.

"When urban property is involved as in this instance, occupancy and monthly payments, as for each month's rent, are insufficient, standing alone, to indicate an intention to create a yearly tenancy. These acts cannot be construed as indicative of anything more than an intention to create

a tenancy from month to month, and the effect thereof is not changed by the mere length of time the occupation continues." *Johnson* v. *Albertson,* 51 Minn. 336, 53 N. W. 643.

Hence, when a tenancy from month to month has begun, the bare fact that the holding thereunder continues for more than twelve months does not transform the same into a tenancy from year to year.

A lease to begin May 1, 1877, at $10.00 a month, payable in advance, was held to be a tenancy from month to month. *Steffens* v. *Earl,* 40 N. J. Law, 128, 29 Am. Rep. 214. In this case it was insisted that the words used imported a tenancy at will, or from year to year, and that a notice of three months was required. This contention was overruled.

To constitute a tenancy from month to month, a special agreement to that effect may be made, or the tenancy may be implied from the manner in which the rent is paid. A lease for an indefinite term with monthly rent reserved creates a tenancy from month to month. 24 Cyc., p. 1034.

In the absence of any special agreement as to the extent of the lease, it must be presumed to have been a monthly one. *Paquetel* v. *Gauche,* 17 La. Ann. 64.

If, after the termination of a term of years, the lessee agrees to pay rent as long as he occupies the premises, and continues to pay rent by the month, the demise becomes a tenancy from month to month. *Rogers* v. *Brown,* 57 Minn. 223-4, 58 N. W. 981.

When premises are let for an indefinite term, the rent being paid monthly, then in contemplation of law a new letting commences with each monthly term. *Borman* v. *Sandgren,* 37 Ill. App. 163, and cases cited. Woods Landlord & Tenant, sec. 539.

From the occupation and payment of monthly rent, the law creates a tenancy from month to month. *Sebastian* v. *Hill,* 51 Ill. App. 274; *Creighton* v. *Sanders,* 89 Ill. 543; *Warner* v. *Hale,* 65 Ill. 395; *Prickett* v. *Ritter,* 16 Ill. 96.

23

In most jurisdictions the reservation of a monthly rent will make the tenancy one from month to month and not from year to year. Tiffany, Landlord & Tenant, p. 137, note.

The view in many jurisdictions is that a tenancy from month to month is *prima facie* created by a letting at a monthly rent for no definite period. This is supported by a number of cases cited. Tiffany, p. 134, note 506. *Hungerford* v. *Wagoner*, 5 App. Div. 590, 39 N. Y. Supp. 369; *Thompson* v. *Chick*, 92 Hun. (N. Y.) 510, 37 N. Y. Supp. 59.

It must not be presumed that there are no authorities for the contention that all tenancies for an indefinite time are deemed to be tenancies from year to year. There are such authorities, and they will be cited in this connection, but their statement of the rule is a sweeping generalization, that may not be followed in many cases without committing palpable injustice.

The following extract is taken from *Stedman* v. *McIntosh*, 42 Am. Dec. 126: "The courts early began to regard all demises for uncertain periods as tenancies from year to year, and at present tenancies for an indefinite period are generally regarded as tenancies from year to year."

"Tenancies of indeterminate duration, anciently deemed tenancies at will, are now considered as from year to year." 24 Cyc., p. 1036, and cases cited.

But for a somewhat different statement of this principle see *Id.*, p. 1028: "Tenancy from year to year arises by implication, as when property is occupied generally under a rent payable yearly, half-yearly, or quarterly. Payment of rent is merely a fact bearing on the intent." See also as to intent 2 Minor's Inst. and Minor on Real Property, cited *supra*.

We have been cited to no Virginia decisions bearing precisely on the point in issue.

[10] Upon comparison and consideration of the au-
thorities and precedents cited, this court is of opinion, with
relation to the creation of periodic estates by a general
letting, that an estate from year to year is not inexorably
established upon such a letting by the bare fact that the
rent is accepted, or measured by an aliquot part of a year,
but that the length of the recurring periods of the estate
so established should be derived from the character of the
letting, the payment of the rent, and the attendant facts
proper to be considered in seeking the intention of the
parties.

[11] The facts in this case from which a conclusion of
intent is to be derived, are: First, That there was no
agreement between the parties as to the length of the term;
Second, That the lands are urban property, consisting of
two lots in Cottage Park, in Alexandria county; Third,
That these lands were demised to the defendant to be used
by him as his dwelling, at a monthly rental of $25.00.

Applying the principles announced to these facts, the
court is of opinion that the periodic estate established by
the contract of the parties in the instant case was a tenancy
from month to month, and not from year to year, and that
the learned judge of the circuit court of Alexandria county
was in error in holding that the plaintiff was not entitled
to recover possession of said premises upon a notice of one
month.

The judgment complained of must be reversed, and this
court will enter the order proper to have been made by
the circuit court.

*Reversed.*