# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢.

## W. P. THURSTON AND W. E. MORTON v. S. M. WOODWARD.

### June 12, 1924.

1. APPEAL AND ERROR—*Petition for Writ—Assignment of Errors.*—A petition for a writ of error is in the nature of a pleading, and should state the *specific* errors claimed to have been committed by the lower court. An assignment of error in general terms will not answer the requirements of the statute. The petitioner must "lay his finger on the error."

2. APPEAL AND ERROR—*Conflicts in Evidence—Case at Bar.*—Conflicts in the evidence are questions for the jury, and their finding is conclusive on appeal. In the instant case defendants contended that they never authorized the execution of the lease in question by a codefendant, but there was some proof that they agreed to the terms contained in the lease, and the verdict for plaintiff concluded the question in his favor.

3. LANDLORD AND TENANT—*Statute of Frauds—Lease and Contract for a Lease.*—In the instant case the instrument in question was not a contract for a lease to be made at a future time, but a present demise; therefore, the instrument did not fall within the provisions of the statute of frauds, but was governed by the statute of conveyances.

Error to a judgment of the Circuit Court of the city of Richmond, in a proceeding by motion for a judgment for money. Judgment for plaintiff. Defendants assign error.

*Affirmed.*

The opinion states the case.

*C. W. Throckmorton,* for the plaintiffs in error.

*A. B. Dickinson,* for the defendant in error.

WEST, J., delivered the opinion of the court.

This was a proceeding by notice of motion by S. M. Woodward against W. P. Thurston, W. E. Morton and J. C. Byars to recover $990.00 for the rent of an office on south Tenth street, Richmond, Virginia. There was a verdict and judgment for Woodward against all the defendants, and Thurston and Morton assign error.

Several of the errors alleged in the petition are, under the decisions of this court, insufficiently assigned. *A. & D. R. Co.* v. *Reiger*, 95 Va. 418, 28 S. E. 590; *N. & W. Ry. Co.* v. *Perrow*, 101 Va. 345, 43 S. E. 614; *Bank* v. *Trigg Co.*, 106 Va. 327, 56 S. E. 158; *Amusement Co.* v. *Pine Beach Co.*, 109 Va. 325, 63 S. E. 1002, 16 Ann. Cas. 1120; *Lorillard Co.* v. *Clay*, 127 Va. 734, 104 S. E. 384; *Washington-So. Ry. Co.* v. *Cheshire*, 109 Va. 741, 65 S. E. 27; *Deitz* v. *High*, 131 Va. 7, 109 S. E. 215; *Orr* v. *Pennington*, 93 Va. 268, 24 S. E. 928; *Puckett* v. *Commonwealth*, 134 Va. 574, 113 S. E. 853.

[1] A petition for a writ of error is in the nature of a pleading and should state the *specific* errors claimed to have been committed by the lower court. An assignment of error in general terms will not answer the requirements of the statute. As said in the *Trigg Case*, *supra*, counsel for the petitioner must "lay his finger on the error."

It seems unnecessary to point out these defects *seriatim*, since, in our view, the case can be properly disposed of under the assignment which challenges the ruling of the court in refusing to set aside the verdict because it was contrary to the law and the evidence.

Plaintiffs in error admit in their petition that they can be held liable for $360.00 for six months' rent, but contend that the verdict is contrary to the law and the evidence, and that the court erred in not setting aside

the verdict and entering judgment against them for only $360.00 with interest.

On September 16, 1919, Byars, Morton and Thurston agreed to form a title guarantee company, to be known as the Virginia Title Guarantee Corporation.

Byars was authorized by Morton and Thurston to ascertain whether the office on Tenth street could be secured. Byars saw Woodward, who agreed to rent the office for six months, beginning October 1st, at $60.00 per month, with the understanding that thereafter it would be $70.00 per month.

On September 19, 1919, Byars wrote Woodward stating he was authorized to accept his proposition for rent of the office at $60.00 per month, beginning October 1, 1919, for six months, with the option of renewing the lease for one year from that date at $70.00 per month. He also informed Woodward that the Virginia Title Guarantee Corporation, for which the office was being rented, was in process of organization and would be ready to execute the contract of lease on or before October 1, 1919. On October 1, 1919, Woodward replied enclosing a formal lease between himself and the Virginia Title Guarantee Corporation, signed by him, with the request that it be executed in duplicate by the corporation and one copy returned to him.

The lease provided that the property was leased for a term of six months, beginning October 1st and expiring March 31, 1920, at $60.00 per month, with the further proviso that unless the lessee gave two months' written notice of its desire to vacate the premises at the expiration of the lease, on March 31, 1920, the lease should continue in force from year to year at $70.00 instead of $60.00 per month. The charter for the corporation was granted about December 1, 1919, but the company was never organized.

The plaintiffs in error contend that the contract of lease, so far as they are concerned, was embodied in the letter of Byars to Woodward, dated September 19, 1919, in which he says: "I am authorized to accept your proposition for the rent of the office, No. 2 south Tenth street, at $60.00 per month, beginning October 1, 1919, for six months, with the option of renewing the lease for a year from that date at $70.00 per month."

They deny that they, or Byars, with authority to act for them, ever exercised the option to renew the lease for twelve months from March 31, 1920, at $70.00 per month.

The lease prepared by Woodward and mailed to Byars did not conform to the contract contained in Byars' letter of September 19, 1919, but contained the provision, above quoted, that the lessee should give two months' written notice of its desire to vacate the premises at the expiration of the six months, otherwise the lease was to continue in force from year to year at a rental of $70.00 per month. The lease was returned to Woodward without the signature of either defendant, and Morton and Thurston testify that they never authorized Byars to enter into any contract or lease for the office. Woodward never had any communication with Morton or Thurston and neither of them ever saw the written contract of lease. Woodward sent all the bills to Byars and Byars never presented them to Morton or Thurston.

Byars *testified* that Morton and Thurston authorized him to rent the office for six months, with the privilege to renew it for one year at $70.00 per month.

On October 1, 1919, Woodward wrote Byars as follows: "As per your letter of the 19th ulto., and my conversation with you on that date, I am enclosing here-

with lease in duplicate for the office, No. 2 south Tenth
street    *    *."

It is apparent that Woodward did not draw the con-
tract in accordance with the terms stated in Byars' let-
ter of September 19, 1919, and unless there is some proof
that Morton and Thurston agreed to the terms con-
tained in the written lease, they cannot be held liable
for rent in any sum in excess of $360.00.

Byars received the written lease on October 1, 1919,
and held it in his possession without raising any ques-
tion as to its provisions until the trial of the case on
March 2, 1922.    Besides, on July 22, 1920, Byars wrote
Woodward as follows:    "*    *    The parties associated
with me in the incorporation of this company and who
authorized me to rent the office *on the terms outlined in
the contract*, and who were to put in their part of the
money against my services for the organization of the
company, have gotten cold feet, and now decline to pay
this rent or complete the organization of the company.
At my last interview they authorized me to cancel the
rental contract (which had never been executed) so that
there would be no further loss to any one connected
with the enterprise.    The object of this letter, therefore,
is to return to you the contract drawn up in the name of
Virginia Title Guarantee Corporation, and ask that
this company and its organizers be relieved of any fur-
ther liability for the rent of this office.

"I am not prepared to assume further responsibility
for future rents, nor am I prepared to advance the
money for the rent past due, but if these parties, Mr.
W. E. Morton and W. P. Thurston, will bear their pro-
portion of this obligation, I will settle the same to date."
(Italics ours.)

[2] There was evidence to support the verdict.    The

conflicts in the evidence were questions for the jury, and their finding is conclusive here.

[3] For the reasons already suggested, we feel under no obligation to discuss the other errors mentioned in the petition. But we will add that a careful examination of the record satisfies us that the question involved was not a contract for a lease to be made at a future time, but a present demise, which is not within the provisions of the statute of frauds, but is governed by the statute of conveyances; and that the jury were fully and fairly instructed on the law applicable to the case.

The judgment is without reversible error and will be affirmed.

*Affirmed.*